IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| SYLVIA CAMPOS, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff*, | ) ) | No. 1:23-cv-03843 |
| v. | ) ) ) | Hon. John J. Tharp |
| TUBI, INC., a Delaware corporation. | ) ) | |
| *Defendant*. | ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Sylvia Campos ("Plaintiff") brings this First Amended Class Action Complaint against Defendant Tubi, Inc. ("Tubi" or "Defendant") to stop Defendant's unlawful disclosure of its customers' personally identifiable information and to seek redress for all those who have been harmed by Defendant's misconduct. Plaintiff alleges as follows based on personal knowledge as to herself and her own acts and experiences and as to all other matters, on information and belief, including an investigation by her attorneys.

**INTRODUCTION**

1. This is a class action suit brought against Defendant for violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. *et seq*, which prohibits the disclosure of consumers' video viewing history without their informed, written consent.

2. Defendant is the operator of one of the most popular video streaming services in the nation.

3. Tubi's programming includes over 40,000 films and television series from over 250

1

suppliers which it provides to its 64 million monthly active users.[1]

4. Defendant is a strictly ad-supported video-on-demand ("AVOD") service. AVOD services provide their subscribers films and movies for free but incorporate various advertisements that the subscribers are required to watch in order to continue viewing the content.

5. Critically, unlike other AVOD services such as HULU, Defendant does not have *any* paid subscription option that permits users to pay to have ads removed. This means that Defendant's revenue is derived solely from selling advertising space on the various shows and films that it digitally streams.

6. In order to maximize profits and draw-in advertisers, Defendant utilizes sophisticated tracking technology that collects its subscribers' personally identifiable information ("PII"), including information which identifies a person as having viewed specific videos on Defendant's streaming service. Defendant knowingly discloses this information to third-party advertisers so that they can target specific audience segments with specifically-tailored advertisements based on their viewing history.

7. However, Defendant discloses its subscribers' viewing information without their consent, and in doing so, Defendant has violated the VPPA and Plaintiff's and the other Class members' statutory rights.

8. Accordingly, Plaintiff brings this class action for legal and equitable remedies to redress and put a stop to Defendant's practices of knowingly disclosing its subscribers' PII to third parties in violation of the VPPA.

---

[1] www.prnewswire.com/news-releases/tubi-releases-new-findings-on-streaming-tv-trends-in-its-annual-report-the-stream-2023-actionable-audience-insights-for-brands-301746047.html.

## JURISDICTION AND VENUE

9. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Video Privacy Protection Act, 18. U.S.C. § 2710 *et seq*.

10. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) because a substantial part of the events and/or omissions giving rise to the claim occurred in this District, as Plaintiff was a subscriber of Defendant's streaming service in this District.

## PARTIES

11. Plaintiff Sylvia Campos is a natural person and citizen of Illinois.

12. Defendant is a Delaware corporation headquartered in California.

## COMMON FACTUAL ALLEGATIONS

### I. The Video Privacy Protection Act

13. The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1).

14. The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3).

15. A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual material." 18 U.S.C. § 2710(a)(4).

16. Further, the act defines a "consumer" as "any, renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710 (a)(1).

17. In 2012, Congress amended the VPPA, and in so doing, reiterated the Act's

applicability to "so-called 'on-demand' cable services and internet streaming services [that] allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones." S. Rep. 112-259, at 2.

18. Thus, the VPPA applies to video steaming service providers, such as Defendant, and its steaming platforms through which subscribers watch video content.

## II. Defendant Discloses its Subscribers' PII to Third Parties.

19. Defendant operates one of the most popular online video streaming services in the nation, boasting a monthly active user count of 64 million.[2]

20. However, unlike most other streaming platforms like Hulu, Netflix, or Amazon Prime Video which require viewers to pay to access content, Defendant's video streaming platform is a completely ad-supported service, meaning its users are required to watch advertisements to view movies and shows on Defendant's streaming service. Defendant does not offer any paid subscription option.

21. While users are not required to create an account to view content on Tubi's website, mobile application, or smart TV application, Defendant has designed its service to encourage them to do so. Furthermore, only Tubi account holders (hereinafter "Subscribers") are allowed to save movies and tv shows to a "watchlist" and automatically get viewing recommendations from Tubi.

22. During the account creation process Subscribers are not specifically asked to consent to Defendant sharing and disclosing their PII to third parties, including information which identifies them as having viewed specific video content.

23. Despite not obtaining informed, written consent from its Subscribers which is distinct and separate from any form setting forth other legal obligations, Defendant discloses its

---

[2] *Supra.*

4

Subscribers' PII to various third parties.

24. Defendant's disclosure of its Subscribers' PII is evidenced in Defendant's Privacy Policy,[3] which discloses that Defendant may collect a slew of information from its Subscribers including but not limited to:

- A. Registration information – can include name, e-mail address, gender, birthday.
- B. Information from Social Media – can include user ID, user name associated with the account, profile picture, e-mail address, any information made public.
- C. Activity Information:
    - i. "When [subscribers] access and interact with Tubi services, Tubi and its service providers may collect certain information about those visits[]" such as:
        - a. Information about subscribers' computer, device, and browser, including subscribers' IP address browser type, and other software and hardware information; unique device identifier assigned to that device, geolocation data **including subscribers' precise location**.
    - ii. "Cookies and other tracking technologies (such as browser cookies, pixels beacons, local storage, and other mechanisms) use various approaches to collect and store data[]" such as:
        - a. "**Information about your usage of Tubi services, such as pages you have visited, search history, and the video and other content you have viewed.**"

---

[3] https://tubitv.com/static/privacy.

25. Therefore, the compilation of data that Defendant admits it may collect identifies specific Subscribers, their exact location, and the specific video content that they viewed.

26. Defendant further admits in its Privacy Policy that it may use the information it collects and share it with third parties to "deliver content [subscribers] will find relevant and interesting, including advertising and marketing messages" and to "provide [subscribers] with content and advertising that is more interesting and relevant to [the subscriber][.]"[4] Defendant further admits that it can share "demographic information, inferred interests, aggregated information, and information about the different devices and/or browsers [subscribers] use and [subscribers'] activity on such devices and browsers" to assist third parties "in delivering advertising that is more relevant to [subscribers] across marketing channels."[5]

27. Defendant also admits that it may share the above-mentioned collected data, including PII, with "Company Affiliates," and "business partners to permit them to send [subscribers] marketing communications **consistent with [subscribers'] choices**."[6]

28. Critically, while Defendant's privacy policy is careful to only disclose that it "*may*" share Subscribers' PII, including their viewing data, with third parties, Defendant's corporate website and advertiser pitch-decks make clear that Defendant does in fact do so.

29. For example, Defendant's 2023 "Audience Insights" report discloses how one of the advertising campaigns that Defendant created involved Defendant identifying specific individuals that were shown a specific advertisement for an automotive company that they viewed while watching content on Tubi, and disclosing that information, including their contact information, to a survey provider to ask them about their experience viewing the advertisement on

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

6

Tubi.[7]

30. Defendant's Audience Insights report further makes clear that it collects and discloses its Subscribers' viewing data when it identifies specific audience segments that advertisers can reach, including "younger streamers," "older streamers," "Latinx streamers," "family streamers," and "black streamers."[8]

31. Indeed, Defendant touts that its technology allows advertisers to determine the "unique clusters" of content that its advertisements were viewed in, as well as details about the viewers such as age, gender, income, household size, and education.[9]

32. Third-party ad providers that connect advertisers with Tubi and utilize Tubi's ad-platform further confirm that Defendant shares its Subscribers' viewing data. Specifically, Tubi provides advertisers the ability to "reach[] people of different ages, familial statuses, and ethnicities . . . [and] makes its key audience takeaways available to brands to help you decide if your target audience falls into Tubi streamers."[10] Furthermore, Tubi allows advertisers to "track clicks and impressions, whether they watched it with sound, how much they watched, and if they paused the ad."[11]

33. In fact, Defendant has even partnered with TransUnion, a leading credit-reporting agency with exacting details about millions of consumers through the country, to be able to connect its Subscribers' viewing data with specific demographic data that can be used to identify them on

---

[7] www.foxadsolutions.com/landing_page/the-stream-research-audience-insights/#2023-audience-report, at 24.

[8] *Id.* at 27–31.

[9] https://media.foxadsolutions.com/wp-content/uploads/2021/07/11153425/Tubi_Campaign-Insights-One-Sheet_MAY-2022.pdf

[10] www.webfx.com/blog/ppc/tubi-advertising/

[11] *Id.*

7

an individual level. Defendant's partnership allows advertisers to "seamlessly bridge the gap between individual and household, and deliver a more personalized ad experience alongside the content."[12] According to the chief revenue officer at Tubi, integrating TransUnion data allows Tubi to "improve the way advertisers reach and communicate with consumers" and "identify the best types of content and connect that to relevant messaging for viewers." "By creating a linkage from a device ID, Tubi can draw deep insights around consumer preference and deliver better content personalization and recommendations for users."[13]

34. The Mozila Foundation's review of Tubi further confirms that Tubi matches third-party data to "existing customers" to allows advertisers to target specific individuals.[14]

35. In short, Defendant compiles data obtained from its Subscribers, including PII which can be used to identify a specific person, their device information, their location information, and the content and videos a Subscriber views, and shares it with a variety of third parties for profit.

36. At no point does Defendant obtain its Subscribers', including Plaintiff's, prior written consent as required under the VPPA to share their PII and video viewing history with such third parties, and its Subscribers remain unaware that their PII and other sensitive data is being disclosed and/or collected by such third parties.

37. Defendant's Subscribers are unaware of the status of their PII and viewing history, to whom it has been disclosed, and who has possession and retained such information as a result of Defendant's illegal disclosures.

---

[12] https://newsroom.transunion.com/transunion-and-tubi-collaborate-to-meet-connected-consumer-needs-as-demand-for-streaming-tv-accelerates/.

[13] *Id.*

[14] https://foundation.mozilla.org/en/campaigns/paid-programming/tubi/.

38. By disclosing its Subscribers' PII, which reveals both an individual's identity and the video materials they have requested from Defendant's services, Defendant has intentionally and knowingly violated the VPPA.

## FACTS SPECIFIC TO PLAINTIFF

39. Plaintiff Sylvia Campos created an account and subscribed to Defendant's Tubi streaming service in the past two years.

40. Plaintiff has used her account with Defendant to view video materials through her free Tubi subscription on a weekly basis since signing up.

41. While viewing content on Tubi Plaintiff regularly saw various advertisements.

42. The advertisements that Plaintiff saw were paid for by various companies and/or advertising agencies that paid to have their ad content appear specifically on Plaintiff's Tubi application and based on the content that she was viewing or had viewed in the past.

43. In order for Tubi's streaming service to operate for free and place the ads that Plaintiff saw during the content that she viewed, Defendant knowingly and intentionally disclosed Plaintiff's PII, including specifically her viewing history, to third parties.

44. Plaintiff never specifically and separately consented, agreed, authorized, or otherwise permitted Defendant to collect her PII, including specifically information that could be used to identify her as an individual who has requested to view a specific video(s), and disclose her PII to third parties. Plaintiff did not provide her informed written consent to such disclosures in a form distinct and separate from any form setting forth her other legal obligations.

45. To this day, Plaintiff is unaware of the status of her PII, to whom it has been disclosed, and who has possession and retained her PII as a result of Defendant's illegal disclosures.

46. By disclosing Plaintiff's PII, which reveals both her identity and the video materials she has requested from Defendant's services to third parties, Defendant has intentionally and knowingly violated the VPPA and Plaintiff's privacy rights.

## **CLASS ALLEGATIONS**

47. Plaintiff brings this action on her own behalf and on behalf of a nationwide class (the "Class"), defined as follows:

> The Class: All persons in the United States who had an account with Tubi that they used to view video materials from June 16, 2021 to the present.

48. Members of the Class will be referred to as "Class Members."

49. Plaintiff will fairly and adequately represent and protect the interests of the other Class Members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other Class Members, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

50. Absent a class action, most Class Members would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

51. Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the Class Members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

52. The factual and legal bases of Defendant's liability to Plaintiff and to the other Class Members are the same, resulting in injury to the Plaintiff and to all of the other members of the Class. Plaintiff and the other members of the Class have suffered harm as a result of Defendant's unlawful and wrongful conduct.

53. Upon information and belief, there are thousands, if not millions, of Class Members, such that joinder of all members is impracticable.

54. There are many questions of law and fact common to the claims of Plaintiff and the other Class Members, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

(a) Whether Defendant disclosed Class members' PII;

(b) Whether the information disclosed to third parties concerning Class Members PII constitutes personally identifiable information under the VPPA;

(c) Whether Defendant intentionally disclosed the Class Members' PII to third-parties;

(d) Whether Class members provided written informed consent to Defendant's disclosure of their PII to third parties as required by the VPPA;

(e) Whether the Class is entitled to damages and other relief as a result of Defendant's conduct.

### COUNT I
**Violations of the Video Privacy Protection Act**
**(On behalf of Plaintiff and the Class)**

55. Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

56. The VPPA prohibits a "video tape service provider" from knowingly disclosing

11

"personally-identifying information" of any subscriber to their services to a third party without their "informed, written consent[.]" 18 U.S.C. § 2710.

57. As defined in 18 U.S.C. § 2710 (a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."

58. As defined in 18 U.S.C. § 2710 (a)(3), "personally-identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

59. As defined in 18 U.S.C. § 2710 (a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider."

60. Defendant is a "video tape service provider" as defined in 18 U.S.C. § 2710 (a)(4) because it provided movies and television shows to subscribers such as Plaintiff and the other Class members through its streaming service.

61. Plaintiff and the other Class members were "consumers" under the VPPA as they were subscribers to Defendant's streaming service who viewed movies and/or television shows through its service using their Tubi account which granted them additional privileges that they would otherwise not receive such as being able to save content for future viewing and receive customized content recommendations from Defendant.

62. Defendant knowingly caused Plaintiff's and the other Class members' PII, including information that can be used to identify them as having requested or obtained specific video materials or services, to be disclosed to third parties. This information constitutes PII under 18 U.S.C. § 2710 (a)(3) because it identified each Plaintiff and Class Members to third parties as an individual who viewed specific video materials requested from Defendant's streaming

12

platforms.

63. As set forth in 18 U.S.C. § 2710 (b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner."

64. Defendant did not obtain informed, written consent from Plaintiff and the Class Members under the VPPA before disclosing their PII, including specifically their viewing history, to third parties.

65. Defendant knew that these disclosures identified Plaintiff and Class Members to third parties. By disclosing Plaintiff's and Class Members' PII without their written consent, Defendant violated Plaintiff's and Class Members' statutorily protected right to privacy under the VPPA.

66. As a result of the above-mentioned violations, Defendant is liable to Plaintiff and the other Class Members for damages related to their loss of privacy in an amount to be determined at trial.

67. On behalf of herself and the Class, Plaintiff seeks: (i) declaratory relief; (ii) injunctive and equitable relief as it is necessary to protect the interests of the Plaintiff and Class by requiring Defendant to comply with the VPPA; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710 (c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

1. An order certifying the Class as defined above;

2. For all forms of relief set forth above

3. An order enjoining Defendant from continuing to engage in the unlawful conduct and practices described herein;

4. An award of attorney's fees and costs;

5. Such further relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

DATED: July 14, 2023                     Respectfully submitted,

SYLVIA CAMPOS, individually and on behalf of similarly situated individuals

By: /s/ *Eugene Y. Turin*
One of Plaintiff's Attorneys

Eugene Y. Turin
Jordan R. Frysinger
McGuire Law, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*