**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SYLVIA CAMPOS, individually and on behalf of a class of similarly situated individuals, | ) | |
| Plaintiff, | ) | Case No. 23-cv-03843 |
| v. | ) | Hon. John J. Tharp Jr. |
| TUBI, INC., | ) | |
| Defendant. | ) | |

**DEFENDANT TUBI, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)**

**TABLE OF CONTENTS**


INTRODUCTION ........ 1

BACKGROUND ........ 1

A. Plaintiff's Tubi Account Registration Required Her Agreement to Tubi's TOU and Privacy Policy. ........ 2

B. The TOU to Which Plaintiff Agreed Contained an Arbitration Provision. ........ 4

C. Tubi's Privacy Policy ........ 5

D. Plaintiff's Claims. ........ 5

ARGUMENT ........ 6

I. THE COURT SHOULD COMPEL PLAINTIFF TO INDIVIDUALLY ARBITRATE HER CLAIM. ........ 7

A. Federal Law Requires Enforcement of a Valid Agreement to Arbitrate. ........ 7

B. When Plaintiff Registered for a Tubi Account, She Agreed to the TOU, Including a Binding, Enforceable Arbitration Provision. ........ 8

II. IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF HAS NOT STATED A PLAUSIBLE VPPA CLAIM. ........ 10

CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Am.'s Test Kitchen, LP*, No. 1:22-CV-11309 (D. Mass.)....15

*Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746 (N.D. Ill. 2012) ....10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....11

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....11

*Belozerov v. Gannett Co.*,
No. 22-10838-NMG, 2022 WL 17832185 (D. Mass. Dec. 20, 2022) ....15

*Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chi.*,
69 F.4th 437 (7th Cir. 2023) ....11

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) ....11

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) ....13

*Doe v. Massage Envy Franchising, LLC*,
C.A. No. S20C-05-025 RFS, 2020 WL 7624622 (Del. Super. Ct. Dec. 21, 2020) ....8

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017)....11, 14

*Faulkenberg v. CB Tax Franchise Sys., LP*,
637 F.3d 801 (7th Cir. 2011)....2

*U.S. ex rel. Fowler v. Caremark RX, Inc.*,
No. Civ.A.03 C 8714, 2006 WL 3469537 (N.D. Ill. Nov. 30, 2006) ....12

*Goldstein v. Fandango Media, LLC*,
No. 22-80569-CIV-MARRA, 2023 WL 3025111 (S.D. Fla. Mar. 7, 2023) ....15

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ....................11, 16

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*,
665 F.3d 930 (7th Cir. 2012) ....................16

*Johnson v. Uber Techs., Inc.*,
No. 16 C 5468, 2018 WL 4503938 (N.D. Ill. Sept. 20, 2018)....................9, 10

*Lebakken v. WebMD, LLC*,
No. 1:22-cv-644-TWT, 2022 WL 16716151 (N.D. Ga. Nov. 4, 2022) ....................15, 16

*Lee v. Uber Techs., Inc.*,
208 F. Supp. 3d 886 (N.D. Ill. 2016) ....................7

*Miracle-Pond v. Shutterfly, Inc.*,
Case No. 19 cv 04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020)....................8, 9

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ....................11

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)....................7

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015) ....................14

*Rodriguez v. Sony Comput. Ent. Am. LLC*,
No. C 11-4084 PJH, 2012 WL 12921066 (N.D. Cal. Apr. 20, 2012)....................11, 12

*Sellers v. Bleacher Rep., Inc.*,
Case No. 23-cv-00368-SI, 2023 WL 4850180 (N.D. Cal. July 28, 2023)....................15

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) ....................7, 8

*Sosa v. Onfido, Inc.*,
8 F.4th 631 (7th Cir. 2021) ....................7

*Vergara v. Nintendo of Am. Inc.*,
No. 19 C 6374, 2020 WL 2571903 (N.D. Ill. May 21, 2020) ....................7

*Wallace v. Grubhub Holdings, Inc.*,
No. 18 C 4538, 2019 WL 1399986 (N.D. Ill. Mar. 28, 2019) ....................7, 10

**Statutes**

9 U.S.C. § 2....................7

18 U.S.C. § 2710(a)(3) ........ 11, 12

9 U.S.C. § 1 ........ 7

**Other Authorities**

Federal Rule of Civil Procedure 8 ........ 1, 16

Federal Rule of Civil Procedure 12(b)(6) ........ 1, 10

Privacy, www.tubitv.com/static/privacy (last updated July 1, 2023) ........ 5

## INTRODUCTION

The Court should dismiss this case. Plaintiff Sylvia Campos brought her deficient Video Privacy Protection Act ("VPPA") claim in the wrong forum. In creating her Tubi account, Plaintiff agreed to Tubi's Terms of Use ("TOU"), which included a provision requiring Tubi users to resolve any dispute with Tubi through individual arbitration. Thus, Plaintiff must arbitrate if she wishes to pursue her (meritless) VPPA claim.

If the Court does not compel arbitration, it should dismiss Plaintiff's amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiff makes the conclusory assertion that Tubi knowingly disclosed information that identifies her as the particular person having requested or obtained specific video materials or services from a video tape service provider ("VPPA PII") to third parties. But she fails to allege any facts that make such a claim plausible, rather than merely conceivable, as required by Federal Rule of Civil Procedure 8. She does not identify what particular combination of information was purportedly disclosed in violation of the VPPA, or allege that the combination was enough to reveal that she, specifically, requested or obtained specific videos. Likewise, she does not identify a specific third party that purportedly received the disclosure, in what form, or when. Given these deficiencies, Plaintiff's allegations provide no basis to conclude that Tubi shared Plaintiff's VPPA PII with third parties.

## BACKGROUND

Tubi provides an ad-supported video-on-demand streaming service that allows anyone with Internet access to stream movies and TV shows. First Am. Class Action Compl. ¶¶ 19–20 ("Am. Compl."), Dkt. 7. Tubi offers its service for free, and anyone can use it without creating an account. *Id*. ¶ 21. Certain additional features, including a watch list and a "continue watching" feature, are available to those who register and use the service while logged into their account. *Id*.

### A. Plaintiff's Tubi Account Registration Required Her Agreement to Tubi's TOU and Privacy Policy.

On November 16, 2021, Plaintiff created a Tubi account using Tubi's Android device app.[1] Ex. A (Decl. of Matthew Elliott) ¶ 17. When a Tubi user creates an account using Tubi's Android app, the registration page requires the user to accept Tubi's TOU before continuing with registration. *Id*. ¶ 2. The user must select one of three options to "continue" with account creation—registering by email, via a Google account, or via a Facebook account. *Id.* ¶¶ 3–4. Directly below those options, the user is expressly notified that, "[b]y registering, you agree to Tubi TV's Terms of Use and Privacy Policy," with hyperlinks to Tubi's TOU and its Privacy Policy. *Id.* ¶¶ 4–5. This text appears in white letters on a black background, with the words "Terms of Use" and "Privacy Policy" in bold. *Id.* ¶ 4.

[1] In deciding whether to compel arbitration, the Court need not accept the pleadings as true and may consider facts outside of the pleadings. *See Faulkenberg v. CB Tax Franchise Sys., LP,* 637 F.3d 801, 809–10 (7th Cir. 2011) (holding that "[i]t is appropriate" for a court to "consider the evidence submitted with the motion," including regarding the parties' agreement).

The registration page, with its hyperlinked TOU, is reproduced below:




*Id.* ¶ 5.

If the user selects "Continue with Email," the next screen asks for the user's first name, age, gender, email, and a password. *Id.* ¶ 6. After entering that information, the user can click a button that says "Register." *Id.* ¶ 7. Immediately below the Register button is yet another hyperlinked TOU with additional text that reads: "We use this information to confirm that you're

meeting the age requirement set out in our Terms of Use and to personalize your experience. Questions? Let us know at support@tubi.tv." *Id*. Once the user provides that information and taps "Register," the user has created a Tubi account. *Id*. ¶ 8.

**B. The TOU to Which Plaintiff Agreed Contained an Arbitration Provision.**

At the time Plaintiff registered her account with Tubi and agreed to its TOU, the first page of the TOU stated, in bold and all-capital letters with a direct link to the arbitration provision in Section 10:

> **IMPORTANT NOTICE REGARDING ARBITRATION: BY USING ANY TUBI SERVICES AND ACCEPTING THESE TERMS OF USE YOU ARE AGREEING (WITH LIMITED EXCEPTION) TO RESOLVE ANY DISPUTE BETWEEN YOU AND US THROUGH BINDING, INDIVIDUAL ARBITRATION RATHER THAN IN COURT. YOU AND TUBI WAIVE THE RIGHT TO BRING OR PARTICIPATE IN A CLASS ACTION IN CONNECTION WITH SUCH DISPUTES. PLEASE REVIEW CAREFULLY SECTION 10 TITLED "ARBITRATION AGREEMENT AND CLASS ACTION WAIVER" BELOW FOR DETAILS REGARDING ARBITRATION (INCLUDING THE PROCEDURE TO OPT OUT OF ARBITRATION).**

Ex. A-1 (2021 TOU) at Preamble.

The cross-referenced Section 10, in turn, provided as follows:

- Any and all disputes (with limited exceptions not relevant here) between a user and Tubi, "regarding any aspect of [the user's] relationship with Tubi, will be resolved in a binding, confidential, individual, and fair arbitration process, and not in court." *Id.* § 10(1).

- "Each [user] and Tubi agrees to give up the right to sue in court." *Id*.

- While disputes over the limited exceptions can be resolved by a court, "all other disputes over arbitrability shall be resolved by the arbitrator." *Id.* § 10(2).

- Any arbitration under the TOU will be conducted by one neutral arbitrator from the Judicial Arbitration and Mediation Service ("JAMS"), following the JAMS Streamlined Arbitration Rules and Procedures. *Id*. § 10(6).

The TOU also contained a class-action waiver: "Each of you and Tubi also agrees to give up the ability to seek to represent, in a class action or otherwise, anyone but each of you and Tubi (see paragraph 9 below)." *Id.* § 10(3). Paragraph 9 provided:

> YOU AND TUBI MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE OR MULTI-CLAIMANT PROCEEDING, AND THE ARBITRATOR SHALL HAVE NO POWER TO AWARD CLASS-WIDE RELIEF.

*Id*. § 10(9)(a) (capitalization in original).

**C. Tubi's Privacy Policy.**

When a user creates a Tubi account, the user also agrees to Tubi's Privacy Policy. Ex. A ¶ 4. The Privacy Policy outlines Tubi's privacy practices, including: (1) what personal information Tubi may collect; and (2) with whom it may share personal information. *See* Ex. B (Privacy Policy); Am. Compl. ¶¶ 24, 26.[2] Notably, information that identifies a particular person as having requested or obtained video materials is not among the types of information the Privacy Policy says Tubi "may" disclose. *See generally* Ex. B.

**D. Plaintiff's Claims.**

On June 23, 2023, Plaintiff filed a complaint, on behalf of herself and a putative class, alleging that Tubi violated the VPPA by knowingly disclosing her VPPA PII to third parties. Compl., Dkt. 1. This complaint wrongly asserted that the Privacy Policy was an "admi[ssion]" that Tubi shares "PII" with third parties in violation of the VPPA. *Id.* ¶ 23. The Privacy Policy states that Tubi "may" collect personal information (which it defines as name, email address, age, gender, and date of birth) from subscribers, and "may" disclose that information to certain third parties.

---

[2] Tubi last updated its Privacy Policy on July 1, 2023. *See* Privacy, www.tubitv.com/static/privacy (last updated July 1, 2023). Plaintiff quotes from the current policy, so Tubi attaches that version of the policy to this motion. *See* Ex. B. The differences between the attached policy and prior versions are immaterial.

Ex. B. In all but one of its citations to Tubi's Privacy Policy the initial complaint, Plaintiff misrepresented the Policy as instead stating that Tubi "collects," "uses," and "shares … with third parties" its subscribers' PII. Compl. ¶¶ 21, 23–24.

On July 14, 2023, Plaintiff filed a First Amended Class Action Complaint. This pleading corrected Plaintiff's inaccurate allegations regarding the Privacy Policy, adding the word "may" when discussing the Privacy Policy's statements regarding users' personal information. *Compare, e.g.*, *id.* ¶ 24 ("Defendant … admits that it *shares* … PII[ ] with 'Company Affiliates,' and 'business partners to permit them to send [subscribers] marketing communications consistent with [subscribers'] choices.'" (emphasis added)); *with* Am. Compl. ¶ 27 ("Defendant … admits that it *may share* … PII[ ] with 'Company Affiliates,' and 'business partners to permit them to send [subscribers] marketing communications consistent with [subscribers'] choices.'" (emphasis added)). The amended complaint also added allegations regarding Tubi's "corporate website and advertiser pitch-decks," which Plaintiff has asserted "make clear" that Tubi discloses (unspecified) personal information of subscribers to third parties purportedly in violation of the VPPA. Am. Compl. ¶ 28. As discussed below, they do not.

**ARGUMENT**

Plaintiff cannot bring her deficient claim in this Court. She agreed to individually arbitrate her claim when she created her Tubi account, and she is bound by that agreement. In the alternative, this Court should dismiss the complaint for failure to state a claim because it consists of boilerplate allegations, parroting the elements of the statute but without asserting facts that, if true, plausibly allege actual knowing disclosure of VPPA PII—that is, the combination of an individual's identity and viewing history—to third parties.

## I. THE COURT SHOULD COMPEL PLAINTIFF TO INDIVIDUALLY ARBITRATE HER CLAIM.

Plaintiff assented to Tubi's TOU, including an arbitration provision, via a clickwrap agreement, when she registered her Tubi account. The Court should therefore compel her to abide by her agreement and arbitrate.

### A. Federal Law Requires Enforcement of a Valid Agreement to Arbitrate.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, reflects a liberal "national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (citation omitted). Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Consistent with these principles, arbitration should be compelled if (1) there is an enforceable written agreement to arbitrate; (2) the dispute falls within the scope of the arbitration agreement; and (3) the plaintiff has refused to arbitrate. *Vergara v. Nintendo of Am. Inc.*, No. 19 C 6374, 2020 WL 2571903, at *1 (N.D. Ill. May 21, 2020). "[W]here the entire dispute clearly will be decided in arbitration and thus there is no reason to hold on to the case," dismissal, rather than a stay, is appropriate. *Wallace v. Grubhub Holdings, Inc.*, No. 18 C 4538, 2019 WL 1399986, at *6 (N.D. Ill. Mar. 28, 2019) (citing *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1008–09 (N.D. Ill. 2013)).[3]

Arbitration is a matter of contract, *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010), so state law governs whether an arbitration agreement is enforceable, *see Sgouros v. TransUnion*

[3] The alternative, this Court has noted, is to compel arbitration, stay these proceedings pending outcome of the arbitration, and dismiss upon final resolution. *E.g.*, *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 894 (N.D. Ill. 2016) (Tharp, J.).

*Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). Here, the Court should apply Illinois law, as the law of the state of the forum.[4]

### B. When Plaintiff Registered for a Tubi Account, She Agreed to the TOU, Including a Binding, Enforceable Arbitration Provision.

As discussed above, at the time Plaintiff registered for her Tubi account, the first page of Tubi's TOU stated, in bold and all-capital letters with a direct link to the arbitration provision in Section 10:

> **BY USING ANY TUBI SERVICES AND ACCEPTING THESE TERMS OF USE YOU ARE AGREEING (WITH LIMITED EXCEPTION) TO RESOLVE ANY DISPUTE BETWEEN YOU AND US THROUGH BINDING, INDIVIDUAL ARBITRATION RATHER THAN IN COURT.**

Ex. A-1 at Preamble. In turn, Section 10 stated that all disputes between a user and Tubi "regarding any aspect of [the user's] relationship with Tubi, will be resolved in a binding, confidential, individual, and fair arbitration process, and not in court. **Each [user] and Tubi agrees to give up the right to sue in court.**" *Id.* § 10(1)–(2) (bold in original).

Plaintiff agreed to Tubi's TOU, including the arbitration provision, when she created her account in 2021. Ex. A ¶¶ 4–5, 17. Tubi's account-creation pages and TOU formed a "clickwrap agreement," whereby Plaintiff "click[ed] a button or check[ed] a box that explicitly affirm[ed] that [she] ha[d] accepted the terms after having the opportunity to scroll through the terms posted on the website." *Miracle-Pond*, 2020 WL 2513099, at *4 (citations omitted). Because clickwrap

[4] The TOU includes a choice-of-law provision stating that Delaware law governs. Ex. A-1 § 12. A federal district court in Illinois will apply Illinois law if there is no conflict between Illinois law and the law of the state listed in an express choice-of-law provision. *See Sosa v. Onfido, Inc.*, 8 F.4th 631, 637–38 (7th Cir. 2021). Delaware and Illinois law are materially similar with respect to the enforceability of an arbitration provision in a clickwrap agreement. *Compare Doe v. Massage Envy Franchising, LLC*, C.A. No. S20C-05-025 RFS, 2020 WL 7624622, at *3 (Del. Super. Ct. Dec. 21, 2020), *with Miracle-Pond v. Shutterfly, Inc.*, Case No. 19 cv 04722, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020) (applying Illinois law).

agreements require affirmative action by the user, courts applying Illinois law "regularly uphold" arbitration provisions in clickwrap form as valid and enforceable. *Id*. (citation omitted).

For example, in *Miracle-Pond*, the Shutterfly website included a button that said "Accept" below the following statement: "By tapping 'Accept', you agree to use the Shutterfly for Android software and the associated Shutterfly services in accordance with Shutterfly's Terms of Use." *Id*. Users needed to hit "Accept" to proceed with account sign-up. *Id*. The court found that this created "a valid clickwrap agreement," and that plaintiff agreed to the TOU and therefore the arbitration provision contained therein when she registered her Shutterfly account. *Id*.

Likewise, in *Johnson v. Uber Technologies, Inc.*, No. 16 C 5468, 2018 WL 4503938, at *4–5 (N.D. Ill. Sept. 20, 2018), the defendant's app included the following statement: "By creating an Uber account, you agree to the Terms of Service & Privacy Policy," with hyperlinks to the documents. *Id.* at *4. The court held that this "placed a reasonable person on notice that there were terms incorporated with creating an Uber account and that, by creating an account, he or she was agreeing to those terms." *Id.* The fact that the plaintiff "elected not to read the actual terms of service, when he was given an opportunity to do so, ha[d] no probative force." *Id.* at *5.

Plaintiff here agreed to similar terms presented in similar form. She readily admits that she created a Tubi account. Am. Compl. ¶ 39. Tubi's records confirm that she did so using the Tubi Android app. Ex. A ¶ 17. Tubi's registration page required her to accept Tubi's TOU before she could register her Tubi account. *Id.* ¶¶ 2, 4–5. In white text on a black background, immediately below the three account creation options, the registration form stated:



*Id.* ¶ 5. The words "Terms of Use" and "Privacy Policy" were bolded and hyperlinked to the respective policies. *Id.* ¶ 4. The user had to then click "Continue by Email," fill out the necessary information (where Tubi again disclosed that use of its services is governed by the TOU), and tap "Register." *Id.* ¶¶ 6–9. In other words, Tubi's Android app "contained a clear and conspicuous statement that, by creating a [Tubi] account, a user agreed to the [TOU and] Privacy Policy." *Johnson*, 2018 WL 4503938, at *5.

Plaintiff's VPPA claim falls squarely within the ambit of the arbitration clause, which extends to all claims over "any aspect of [her] relationship with Tubi," except for those in small-claims court or regarding intellectual property rights. Ex. A-1 § 10(1)–(2). By filing this action, Plaintiff has refused to honor her agreement to arbitrate. *See Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 753–54 (N.D. Ill. 2012) (refusal-to-arbitrate requirement met when one party sues the other).

Thus, the Court should compel Plaintiff to arbitrate her VPPA claim. And because that is her only claim, dismissal is appropriate. *See Wallace*, 2019 WL 1399986, at *6.

## II. IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF HAS NOT STATED A PLAUSIBLE VPPA CLAIM.

If the Court does not compel Plaintiff to arbitrate, it should dismiss her complaint under Rule 12(b)(6) for failure to state a claim.[5] Plaintiff does not allege facts from which Tubi's knowing disclosure of VPPA PII to a third party can be reasonably inferred.

To state a VPPA claim, Plaintiff must allege sufficient facts that Tubi knowingly disclosed to third parties her "personally identifiable information," defined by the statute as "information

---

[5] The Court should not reach Tubi's arguments for dismissal under Rule 12(b)(6) if the Court determines that Plaintiff is bound to arbitrate. In asserting this alternative ground for dismissal, Tubi does not waive, and intends to fully preserve, its argument that Plaintiff's claim must be arbitrated.

which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). In other words, the only disclosure prohibited by the VPPA is of information that "readily permit[s] an ordinary person to identify a particular individual as having watched certain videos." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 290 (3d Cir. 2016) (alterations omitted)). Thus, to violate the VPPA, Tubi must have disclosed the specific combination of (a) "the consumer's identity"; (b) "the video material's identity"; *and* (c) "the connection between them." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). For each of these components of VPPA PII, Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's allegations are woefully deficient. She alleges that Tubi collects and "discloses its [s]ubscribers' PII to various third parties," purportedly for advertising profit, Am. Compl. ¶ 23, but her allegations do nothing more than echo the language of the statute. Stripping away the "legal conclusions and conclusory allegations merely reciting the elements of the claim," which "are not entitled to [a] presumption of truth," *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chi.*, 69 F.4th 437, 448 (7th Cir. 2023) (citation omitted), Plaintiff is left with no facts that, if true, make actual disclosure of subscribers' actual VPPA PII to actual third parties "plausible," rather than simply "conceivable," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (a plaintiff may not "merely parrot the statutory language of the claims that they are pleading … rather than providing some specific facts to ground those legal claims"); *Rodriguez v. Sony Comput. Ent. Am. LLC*, No. C 11-4084 PJH, 2012 WL

12921066, at *1 (N.D. Cal. Apr. 20, 2012) (dismissing a VPPA complaint for deficient allegations failing to identify actual disclosure of VPPA PII with specificity).

Plaintiff's deficient allegations fall into four categories.

***The Privacy Policy***. Plaintiff says that the Privacy Policy is "evidence[ ]" of Tubi's disclosure of her VPPA PII to third parties. Am. Compl. ¶ 24. It is not, for two reasons. First, the Policy states only that Tubi "*may* collect" certain personal information about its users, and that Tubi "*may* share" certain categories of information with third parties. Ex. B §§ 2–3 (emphasis added).[6] It does not say that Tubi *has disclosed* information *identifying an individual as having requested or obtained specific video materials*. *See Rodriguez*, 2012 WL 12921066, at *1 (dismissing VPPA claim because plaintiff's allegations were framed generically and "fail[ed] to state that a disclosure has affirmatively taken place"); *U.S. ex rel. Fowler v. Caremark RX, Inc.*, No. Civ.A.03 C 8714, 2006 WL 3469537, at *9 (N.D. Ill. Nov. 30, 2006) (allegations about what defendant "might" do were impermissibly conclusory), *aff'd sub nom. U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730 (7th Cir. 2007).

Second, the substance of the Privacy Policy does not support Plaintiff's allegation that the information Tubi allegedly discloses is VPPA PII. Plaintiff claims that the Privacy Policy states that Tubi may share "PII" with third parties, Am. Compl. ¶ 27. But Plaintiff erroneously conflates VPPA PII with the user information discussed in the Privacy Policy. The VPPA prohibits only the disclosure of the *packaging* of information about the individual with *specific titles watched* such that it would "identif[y] a person as having requested or obtained specific video materials or services." 18 U.S.C. § 2710(a)(3). That is, to support Plaintiff's argument, the Privacy Policy

[6] Tubi's Privacy Policy further explains that depending on the user's interactions with Tubi, "Tubi may not have collected [or] disclosed" all categories of information for each individual user. Ex. B. § 3.

would have to say that Tubi discloses information that would permit the third-party recipient to identify a specific individual as having watched specific videos. It does not. For example, Plaintiff characterizes the Privacy Policy as stating that Tubi shares "PII" with Company Affiliates and business partners. Am. Compl. ¶ 27. The provisions of the Privacy Policy that reference Company Affiliates and business partners, however, state only that Tubi may share user "information" as specified in Section 2; they do not say that Tubi shares the specific combination of information that constitutes VPPA PII. Ex. B § 3.[7]

In sum, despite Plaintiff's references to the Privacy Policy, she fails to identify any actual disclosure of VPPA PII that has taken place. She fails to allege what personal data, combined with what particular viewing content, was included in the disclosure. And she fails to identify with any particularity the person or entity to whom disclosure allegedly was made.

***Audience Insights***. Recognizing that the Privacy Policy does not make it plausible that Tubi actually disclosed Plaintiff's VPPA PII, *see* Am. Compl. ¶ 28 ("while Defendant's privacy policy is careful to only disclose that it 'may' share [s]ubscribers' PII, including their viewing data, with third parties …."), Plaintiff turns next to Tubi's "website and advertiser pitch-decks," which, she says, "make clear" that Tubi discloses VPPA PII to third-party advertisers. *Id*. They do not.

For example, Plaintiff points to Tubi's 2023 Audience Insights report. *Id*. ¶ 29; *see* Ex. C (Audience Insights Report). This report discusses Tubi user information in aggregate—for instance, that Tubi's audience consists of certain demographic categories. Ex. C at 26–31. This type of pooled demographic information is not VPPA PII because it does not identify an individual

---

[7] Tubi attaches these materials to its motion to dismiss pursuant to the incorporation-by-reference doctrine, which "provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

as having watched certain videos. *Eichenberger*, 876 F.3d at 985; *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179–82 (S.D.N.Y. 2015) (information disclosed to third party was not VPPA PII because it could not, without additional information from another source, identify plaintiff as a specific person who had watched specific videos).

Plaintiff alleges that a study with KANTAR, cited in the Audience Insights report, shows that Tubi "in fact" discloses VPPA PII. Am. Compl. ¶ 28. Nothing in the report supports that conclusion. As described in the report, as part of this study, a vendor provided the advertiser with *aggregate* information derived from survey results. Ex. C at 24. Aggregate information cannot, by definition, be VPPA PII. *See Robinson*, 152 F. Supp. 3d at 179–82. Moreover, Plaintiff does not allege that she personally was part of this survey, or that her personal information was disclosed to anyone as part of the survey.

***TransUnion***. Plaintiff cites a press release from TransUnion that describes a "partnership" between TransUnion and Tubi that aims to "seamlessly bridge the gap between individual and household, and deliver a more personalized ad experience alongside the content." Ex. D (TransUnion Press Release); *see* Am. Compl. ¶ 33. The press release does not say that Tubi disclosed to TransUnion—or any other third party—any data about a specific consumer's specific viewing history, only that Tubi receives and integrates data from TransUnion to help individualize its users' experiences. Ex. D. This allegation therefore provides no basis to conclude that Tubi shared Plaintiff's VPPA PII with third parties.

***Targeted Advertising***. More broadly, Plaintiff alleges that Tubi *must* have disclosed VPPA PII because it is an "ad-supported video-on-demand" service, derives its income from "selling advertising space on the various shows and films that it digitally streams," and as purportedly reflected by a review of Tubi from the Mozilla Foundation, "allows advertisers to target specific

individuals." Am. Compl. ¶¶ 4–5, 34. All this reflects is that Tubi performs targeted advertising. Nothing cited by Plaintiff suggests that, to facilitate advertising, Tubi shares protected VPPA PII to any third parties.

The deficiencies in Plaintiff's allegations are made especially clear by comparing them to the allegations in VPPA complaints that have survived a motion in dismiss:

- In *Goldstein v. Fandango Media, LLC*, No. 22-80569-CIV-MARRA, 2023 WL 3025111 (S.D. Fla. Mar. 7, 2023), the plaintiffs alleged that a forensic analysis revealed specific details of the defendant's transmission of video and user identifiers to third parties. Specifically, the plaintiffs contended that their research revealed that, through application programming interfaces ("APIs") in its app, the defendant transmitted a combination of its users' email addresses, advertising IDs, and a "unique video identifier for the video clip watched" to third parties. *Id*. at *1 (discussing complaint). The plaintiffs also alleged that the defendant's website integrated the Facebook Tracking Pixel, which caused the defendant to disclose its users' email addresses coupled with information about videos "an accountholder has watched," permitting "an ordinary person to identify a specific individual's video viewing behavior." *Id*. at *2. In light of the detailed allegations, the court denied a motion to dismiss the VPPA claim. *Id.* at *1–2.

- In *Belozerov v. Gannett Co.*, No. 22-10838-NMG, 2022 WL 17832185, at *1 (D. Mass. Dec. 20, 2022), the plaintiff likewise alleged that the defendant's website used the Facebook Pixel, which contained the user's Facebook user ID and "enable[d] [the defendant] to track what video media its users watched … and report it to Facebook." Plaintiff included in his complaint a screenshot of an "HTTP single communication session sent from the [user's] device to Facebook," which showed the defendant's transmission and a third-party's receipt of this information. Compl. ¶¶ 5, 39, 41–42, *Belozerov*, No. 22-10838-NMG, Dkt. 1 (D. Mass. filed June 1, 2022). Denying a motion to dismiss, the court observed that because the unique Facebook ID and video material were presented "as one data point," "that information enables Facebook or any computer-savvy person to discern the identity of the digital subscriber and the specific video content he or she viewed on the USA Today website or app." *Belozerov*, 2022 WL 17832185, at *1.[8]

- In *Lebakken v. WebMD, LLC*, No. 1:22-cv-644-TWT, 2022 WL 16716151 (N.D. Ga. Nov. 4, 2022), the plaintiff forensically examined the WebMD website to reveal the specific "events" that WebMD allegedly transmitted to Facebook, including URLs of specific videos the WebMD user watched; the specific video's title and description; and the user's Facebook ID. Compl. ¶¶ 24–30, *Lebakken*, 1:22-cv-644-TWT, Dkt. 1 (N.D. Ga. filed June

[8] *See also Sellers v. Bleacher Rep., Inc.*, Case No. 23-cv-00368-SI, 2023 WL 4850180, at *1 (N.D. Cal. July 28, 2023); Compl. ¶¶ 33–39, *Adams v. Am.'s Test Kitchen, LP*, No. 1:22-CV-11309 (AK), Dkt. 1 (D. Mass. filed Oct. 21, 2022) (showing screenshots of the HTML code of defendant's website, displaying specific cookies and data points transmitted to Facebook).

10, 2022). On this basis, the court denied the motion to dismiss. *See Lebakken*, 2022 WL 16716151, at *4.

Plaintiff's allegations could not be more different from those found sufficient in these cases. Far from presenting any analysis of Tubi's website and platform—such as by forensically tracking the purported VPPA PII that allegedly traveled from Tubi's platform to its advertisers—Plaintiff does not identify how Tubi allegedly transmits VPPA PII to third parties; the specific types of data points that Tubi allegedly transmits; the specific third parties to whom Tubi allegedly transmits the VPPA PII; or whether Tubi allegedly transmits the VPPA PII in a form that would reveal the "connection" between "the consumer's identity" and "the video material's identity." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1095.

In short, Plaintiff's threadbare allegations provide no basis for concluding that Tubi shared Plaintiff's VPPA PII. Without these alleged facts, Plaintiff has not fulfilled her responsibility under Rule 8 of providing Tubi with "fair notice" of her claim and the ground on which it rests. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (citation omitted).

## CONCLUSION

Because Plaintiff agreed to a valid arbitration clause in the TOU when she created her Tubi account, this Court should compel her to individually arbitrate her claim. If the Court disagrees, however, it should hold that Plaintiff's First Amended Class Action Complaint fails to state a VPPA claim. And because Plaintiff already had amended her complaint once and further amendment would be futile, dismissal should be with prejudice.

Date: August 28, 2023

Respectfully submitted,

TUBI, INC.

By: /s/ *David C. Layden*
*One of its attorneys*

David C. Layden, #6216417
Andrianna D. Kastanek, #6286554
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
DLayden@jenner.com
AKastanek@jenner.com

## CERTIFICATE OF SERVICE

I certify that on August 28, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ *David C. Layden*