**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SYLVIA CAMPOS, individually and on behalf of all others similarly situated, | ) | |
| | ) | Case No. 1:23-cv-03843 |
| Plaintiff, | ) | |
| | ) | Hon. John J. Tharp Jr. |
| v. | ) | |
| | ) | Hon. Young B. Kim |
| TUBI, INC., a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT TUBI, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT UNDER RULE 12(b)(6)**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

I. PLAINTIFF HAS AGREED TO ARBITRATE HER CLAIM. ............................................. 2

A. Tubi's Registration Page Is a Valid Clickwrap Agreement. ....................................... 2

B. Even If It Is Considered a Hybridwrap Agreement, Tubi's Account Creation Page Provided Reasonably Conspicuous Notice of the TOU To a Reasonable User. .......... 5

C. Plaintiff's Two Cases Involved Agreements That Are Readily Distinguishable. ........ 7

II. IN THE ALTERNATIVE, PLAINTIFF NONETHELESS FAILS TO STATE A CLAIM UNDER THE VPPA BECAUSE SHE DOES NOT PLEAD ANY KNOWING DISCLOSURE OF VPPA PII. ........................................................................................ 9

A. Plaintiff's Invocation of Tubi's Privacy Policy and Other Documents Do Not Adequately Plead That Tubi Disclosed Plaintiff's VPPA PII. .................................... 9

B. Plaintiff's Reliance on Other VPPA Complaints Only Highlights the Deficiencies in Hers. ........................................................................................................ 13

CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adibzadeh v. Best Buy Co. Inc.*,
No. 20-cv-06257, 2021 WL 4440313 (N.D. Cal. Mar 2, 2021) ....................3

*Anand v. Heath*,
No. 19-CV-00016, 2019 WL 2716213 (N.D. Ill. June 28, 2019)....................7, 8

*Anderson v. Amazon.com, Inc.*,
490 F. Supp. 3d 1265 (M.D. Tenn. 2020)....................5, 6, 7

*Ball v. Skillz, Inc.*,
No. 2:20-cv-00888, 2020 WL 6685514 (D. Nev. Nov. 12, 2020)....................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................9, 10, 14

*Boelter v. Advance Mag. Publishers Inc.*,
210 F. Supp. 3d 579 (S.D.N.Y. 2016)....................10

*Bold Ltd. v. Rocket Resume, Inc.*,
No. 22-cv-01045, 2023 WL 4157626 (N.D. Cal. June 22, 2023)....................4, 6

*Buechler v. Gannett Co.*,
No. 22-1464-CFC, 2023 WL 6389447 (D. Del. Oct. 2, 2023) ....................14

*Cooper v. Slice Techs., Inc.*,
No. 17-CV-7102, 2018 WL 2727888 (S.D.N.Y. June 6, 2018) ....................11

*Doe v. Columbia Coll. Chi.*,
933 F.3d 849 (7th Cir. 2019) ....................13

*Fjeta v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012)....................8

*Gamez v. VF Corp.*,
No. CV 18-6246, 2018 WL 6333560 (C.D. Cal. Nov. 21, 2018)....................11

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ....................10

*Johnson v. Uber Techs., Inc.*,
No. 16 C 5468, 2018 WL 4503938 (N.D. Ill. Sept. 20, 2018)....................3

*Lebakken v. WebMD Inc.*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022) ....................13

*Louth v. NFL Enterprises, LLC*,
2022 WL 4130866 (D.R.I. Sept. 12, 2022) ....................13

*Martin v. Meredith Corp.*,
No. 22cv4776 (DLC), 2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023) ....................14

*Meyer v. Uber Techs, Inc.*,
868 F.3d 66 (2d Cir. 2017) ....................5, 6, 7, 8, 9

*Miracle-Pond v. Shutterfly, Inc.*,
No. 19 cv 04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020) ....................3

*Nashel v. New York Times Co.*,
No. 2:22-cv-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) ....................10, 11

*O'Callaghan v. Uber Corp. of California*,
No. 17 Civ. 2094, 2018 WL 3302179 (S.D.N.Y. July 5, 2018) ....................3

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................5, 6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ....................11–12

*Regan v. Pinger, Inc.*,
No. 20-CV-02221, 2021 WL 706465 (N.D. Cal. Feb. 23, 2021) ....................6

*Selden v. Airbnb, Inc.*,
No. 16-cv-00933, 2016 WL 6476934 (D.D.C. Nov 1, 2016) ....................5, 6, 7

*Starkey v. G Adventures, Inc.*,
796 F.3d 193 (2d Cir. 2015) ....................8

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) ....................9, 10

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ....................8

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................13

*Weimin Chen v. Sierra Trading Post, Inc.*,
No. 2:18-cv-1581, 2019 WL 3564659 (W.D. Wash. Aug. 6, 2019) ....................6

*Wilson v. Redbox Automated Retail, LLC*,
448 F. Supp. 3d 873 (N.D. Ill. 2020) ........................................ 8, 9

*Wilson v. Triller, Inc.*,
598 F. Supp. 3d 82 (S.D.N.Y. 2022) ........................................ 14

**Statutes**

18 U.S.C. § 2710(a)(3) ........................................ 2

## INTRODUCTION

Nothing in Plaintiff's Opposition refutes the two basic points Tubi made in its Memorandum in support of its Motion to Compel or Dismiss—(1) Plaintiff must arbitrate her (meritless) claims if she wants to pursue them, and (2) her Amended Complaint does not allege sufficient facts to state a claim.

With regard to arbitration, Plaintiff admits she took the actions necessary to agree to mandatory arbitration, and her arguments to excuse compliance with her commitment are baseless. Plaintiff acknowledges that she clicked through Tubi's registration page and created an account. Dkt. 19 ("Opp.") at 1. And she does not dispute that creating a Tubi account requires the user to agree to Tubi's Terms of Use ("TOU"), including its mandatory arbitration provision. Plaintiff's only rationale for circumventing her agreement is that (according to her) the agreement at issue here was a "hybridwrap" rather than a "clickwrap" agreement, and the linkage between the agreement and the registration process was not clear enough. But Plaintiff's attempt to characterize Tubi's registration process as a "hybridwrap" and not a "clickwrap" agreement is beside the point. No matter how they are characterized, courts routinely enforce agreements—like Tubi's—that follow a format common in today's world of mobile devices. Plaintiff's comparisons to unenforceable hybridwrap agreements ignore the stark differences between Tubi's page and the pages in those cases. Plaintiff is thus bound by the TOU, including its arbitration provision, and must arbitrate her claim.

Even if she could escape her clear assent to the TOU, Plaintiff does not articulate a plausible claim under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), because she does not allege facts sufficient to establish that Tubi collected, let alone knowingly disclosed, any personally identifiable information as defined under the VPPA, *i.e.*, "information which identifies a person as having requested or obtained specific video materials or services from a video tape

service provider" ("VPPA PII") in violation of the statute. *Id.* § 2710(a)(3). Plaintiff points only to Tubi's Privacy Policy's use of the word "may," and a handful of other documents. But as the cases discussed below make clear, a privacy policy's statement about what a service "may" collect or disclose cannot state a claim. Nor do any of the other sources support her strained view that Tubi discloses the specific combination of identifying and video viewing information prohibited under the VPPA. Indeed, comparing her cases to other VPPA cases highlights the deficiencies in Plaintiff's allegations. Plaintiff's generalized, conclusory statements fail to plausibly allege a VPPA claim, and the Court should grant Tubi's motion to dismiss (in the event the Court does not compel arbitration).

## I. PLAINTIFF HAS AGREED TO ARBITRATE HER CLAIM.

Plaintiff concedes that (1) she clicked the "Continue with Email" button on Tubi's sign-in screen, (2) she then created a Tubi account, and (3) the page on which she did this expressly stated "[b]y registering, you agree to Tubi TV's Terms of Use and Privacy Policy." Opp. at 5–6, 9. Yet she tries to dodge her binding arbitration agreement by asserting that it was a "hybridwrap" agreement that was not "reasonably conspicuous." This is wrong. While courts are not always clear on the dividing line between "clickwrap" and "hybridwrap" agreements, the important point is that *they enforce both* as long as a consumer has reasonable notice. That was certainly the case here. Tubi's registration page design is a very common one for establishing terms—including arbitration provisions—that federal courts routinely enforce. Plaintiff cannot ignore the ubiquity of these types of agreements and claim that this common arrangement should not bind her.

### A. Tubi's Registration Page Is a Valid Clickwrap Agreement.

To begin with, Tubi's sign-in page meets the definition of a clickwrap agreement, which courts enforce as a matter of course. Clickwrap agreements involve the user "click[ing] a button … that explicitly affirms that the user has accepted the terms after having the opportunity to scroll

through the terms posted on the website." *Miracle-Pond v. Shutterfly, Inc.*, No. 19 cv 04722, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020) (citations omitted).

For example, in *Adibzadeh v. Best Buy Co. Inc.*, No. 20-cv-06257, 2021 WL 4440313, at *5 (N.D. Cal. Mar 2, 2021), the court found that the defendant's sign-in page contained a clickwrap agreement and compelled arbitration where "[e]ach time an existing customer like [the plaintiff] log[ged] into [the defendant's website] to make purchases and earn points, the customer must enter in an email and password and click 'Sign In.' Directly below the 'Sign In' button is the following text: 'By continuing you agree to our Terms and Conditions, our Privacy Policy, and the My Best Buy® Program Terms.'" And in *O'Callaghan v. Uber Corp. of California*, No. 17 Civ. 2094, 2018 WL 3302179, at *6–8 (S.D.N.Y. July 5, 2018), the court held that a similar design to Tubi's was an enforceable clickwrap agreement. Courts in this district have followed this approach and upheld the validity of these types of agreements. *See, e.g., Johnson v. Uber Techs., Inc.*, No. 16 C 5468, 2018 WL 4503938, at *4–5 (N.D. Ill. Sept. 20, 2018).

Tubi's registration page is functionally identical to those in *Adibzadeh*, *O'Callaghan*, and *Johnson*. Like many other online services, Tubi's account creation page displays three buttons to create an account using the individual's email, Google account, or Facebook account. Dkt. 13 ("Mem.") at 8; Dkt. 13-1 ("Elliott Decl.") at ¶ 5. And directly underneath those buttons the page states, "By registering, you agree to Tubi TV's **Terms of Use** and **Privacy Policy**." Elliott Decl. ¶ 4. That text is written in white text on a black background and with bolded text for hyperlinks. *Id.* By clicking any of the three buttons, the user affirms his or her acceptance of the TOU and has had the opportunity to review the TOU through the hyperlinks. Plaintiff's only claim to the contrary—that the text is "almost the same dark color as the black background," Opp. at 12—is

belied by Tubi's declaration that this text is "in white letter on a black background," Elliott Decl. ¶ 4, as well as the screenshot, which is reproduced below.[1]




[1] Plaintiff's confusion may be due to degradation of the images due to the PDF nature of the filings. *See, e.g.*, *Bold Ltd. v. Rocket Resume, Inc.*, No. 22-cv-01045, 2023 WL 4157626, at *4 (N.D. Cal. June 22, 2023) (pixelated screenshot of defendant's webpage).

### B. Even If It Is Considered a Hybridwrap Agreement, Tubi's Account Creation Page Provided Reasonably Conspicuous Notice of the TOU To a Reasonable User.

Even if the Court were to determine that Tubi's registration page is a hybridwrap agreement, Plaintiff still agreed to mandatory arbitration. Like clickwrap agreements, hybridwrap agreements are routinely enforced. *See Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1275 (M.D. Tenn. 2020) (collecting cases). Courts will enforce a hybridwrap agreement if the user has constructive notice "where '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (citation omitted). Here, Plaintiff does not dispute that she took the action to manifest assent, since she admits that she clicked on the "Continue with Email" button and created a Tubi account for herself. Opp. at 5–6. Thus, the only question left is whether Tubi's registration page provided Plaintiff "reasonable conspicuous notice" of the TOU.

The reasonableness of hybridwrap agreements is based on "whether a reasonably prudent user would be on inquiry notice of the terms." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74–75 (2d Cir. 2017) (citations omitted). In the context of terms presented on a phone like Plaintiff's Android, this means "consider[ing] the perspective of a reasonably prudent smartphone user." *Id.* at 77 (citation omitted). And "[t]he act of contracting for consumer services online is now commonplace in the American economy. Any reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider. Notifications to that effect—be they check boxes or hyperlinks—abound." *Selden v. Airbnb, Inc.*, No. 16-cv-00933, 2016 WL 6476934, at *5 (D.D.C. Nov 1, 2016). Thus, given the omnipresence of these types of agreements and that smartphones and smartphone apps have

become such an integral part of our day-to-day lives, courts "need not presume that the user has never before encountered an app or entered into a contract using a smartphone." *Meyer*, 868 F.3d at 77; *Selden*, 2016 WL 6476934, at *5 ("[I]gnorance of the precise terms does not mean that consumers are unaware they are entering contracts by signing up for internet-based services.").

Here, Tubi's registration page provides reasonably conspicuous notice of its TOU. The registration page presents all the buttons and language on the user's screen at once and does not require him or her to scroll. *See* Elliott Decl. ¶ 5. Below the three buttons is the language "By registering, you agree to Tubi TV's **Terms of Use** and **Privacy Policy**." *Id.* This language appears in white text on a black background, and the words "Terms of Use" and "Privacy Policy" are in bold and hyperlinked. *Id.* ¶¶ 4–5. As discussed below, numerous courts have held that similarly designed webpages provide adequate notice. *See, e.g.*, *Oberstein*, 60 F.4th at 516–17; *Meyer*, 868 F.3d at 78–79; *Bold Ltd.*, 2023 WL 4157626, at *4; *Ball v. Skillz, Inc.*, No. 2:20-cv-00888, 2020 WL 6685514, at *3–4 (D. Nev. Nov. 12, 2020); *Anderson*, 490 F. Supp. 3d at 1275–76; *Weimin Chen v. Sierra Trading Post, Inc.*, No. 2:18-cv-1581, 2019 WL 3564659, at *3 (W.D. Wash. Aug. 6, 2019); *Selden*, 2016 WL 6476934, at *5; *see also* Exhibit 1 (screenshots of registration pages in cited cases).

Plaintiff complains that "*nothing* link[s]" the buttons to the language informing the user of the Tubi TOU and that the spacing is too "far apart." Opp. at 11–13. But Tubi's design is logical and nearly ubiquitous. Tubi's registration page follows the common practice seen across various smartphone apps whereby users agree to terms—often including mandatory arbitration—when they register for service. *See, e.g.*, *Meyer*, 868 F.3d at 81–82; *Bold Ltd.*, 2023 WL 4157626, at *4; *Regan v. Pinger, Inc.*, No. 20-CV-02221, 2021 WL 706465, at *1–2 (N.D. Cal. Feb. 23, 2021); *Ball*, 2020 WL 6685514, at *1; *Anderson*, 490 F. Supp. 3d at 1269; *Selden*, 2016 WL 6476934, at

*9. Thus, any reasonable smartphone user should be well aware from a brief review of Tubi's page that creating an account would bind him or her to the TOU.

In fact, courts have explicitly rejected Plaintiff's position. Tubi's registration page parallels the design in *Selden*, for example, where the defendant's webpage included options to create an account using his or her email, Facebook account, or Google account (just like Tubi provides). *See* 2016 WL 6476934, at *9. The court found that "[a]lthough the text is not directly under the first or second alternative sign-up buttons, any reasonably-observant user would notice the text and accompanying hyperlinks." *Id.* at *5. *Meyer* presented similar screens, where the "Register" button also appeared with buttons to use PayPal or Google Wallet accounts, followed by the notice. 868 F.3d at 81–82. The court there held that the text "appear[ed] directly below the buttons for registration," whether that be via email, PayPal, or Google. *Id.* at 78. And in *Anderson*, the court enforced the online agreement when defendant's webpage included language about the terms, followed by three separate links below, before the user saw the button. 490 F. Supp. 3d at 1269. Tubi's design is just like the ones enforced in these cases.

**C. Plaintiff's Two Cases Involved Agreements That Are Readily Distinguishable.**

Plaintiff relies almost exclusively on two cases that held particular hybridwrap agreements unenforceable, but the webpages at issue in those cases are wholly distinct from Tubi's registration page. *First*, Plaintiff relies on *Anand v. Heath*, No. 19-CV-00016, 2019 WL 2716213 (N.D. Ill. June 28, 2019), which included different language that was not nearly as clear as Tubi's notice. In *Anand*, the defendant's webpage stated only, "I understand and agree to the Terms & Conditions which includes mandatory arbitration and Privacy Policy." *Id.* at *1. This Court found that this language did not "explain[] that clicking the 'Continue' button would constitute assent to the terms and conditions or that continuation was conditioned on such assent." *Id.* at *4. Here, by

contrast, the language expressly states that "[b]y registering, [she] agree[d] to Tubi TV's Terms of Use and Privacy Policy."

In *Anand*, this Court distinguished other cases that had enforced online agreements "because those agreements included language expressly linking an action by the user to the manifestation of assent." *Id.* at *5. *See, e.g.*, *Fjeta v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835, 840 (S.D.N.Y. 2012) (language read "[b]y clicking Sign Up, you are indicating that you have read and agree to the Terms of Service," and thus plaintiff "was informed of the consequences of his assenting click"); *Meyer*, 868 F.3d at 71, 81–82 (language stated "[b]y creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY."); *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 195 (2d Cir. 2015) (text explained "[c]onfirmation of your reservation means that you have already read, agreed to and understood the terms and conditions, however, you can access them through the below link if you need to refer to them for any reason" and that "[b]y booking a trip, you agree to be bound by these Terms and Conditions…."); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908 (N.D. Cal. 2011) (text explained that "[b]y proceeding, you … are agreeing to the … Terms of Service …."). Tubi's registration page fits squarely within these enforceable agreements because it states: "[b]y registering, you agree to Tubi TV's Terms of Use and Privacy Policy." Elliott Decl. ¶ 4.

*Second*, Plaintiff invokes *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873 (N.D. Ill. 2020), but that decision also involved a webpage that departed from the norm with which Tubi comports. In that case, the court found there was insufficient notice because the page also included multiple buttons that were "entirely unrelated to the function by which a [] customer manifests assent to the Terms of Use." *Id.* at 884. The *Wilson* court distinguished this screen from the one at issue in *Selden*, "where intervening buttons or links separate the mechanism for

manifesting assent and the terms and conditions, those buttons provide alternative means of manifesting assent." *Id*. The cluttered check-out page in *Wilson* is squarely at odds with the streamlined nature of Tubi's registration page. Tubi does not present any other buttons except those that are related to the actions needed to manifest assent to the TOU.

Ultimately, how a web-based contract is categorized is not dispositive; the ultimate inquiry is whether the individual had notice. *See Meyer*, 868 F.3d at 76. Tubi's registration page tracks the design that federal courts have consistently ruled establishes a binding legal agreement upon registration. Plaintiff is bound by her agreement to arbitrate her claim, and the Court should grant Tubi's motion to compel.

## II. IN THE ALTERNATIVE, PLAINTIFF NONETHELESS FAILS TO STATE A CLAIM UNDER THE VPPA BECAUSE SHE DOES NOT PLEAD ANY KNOWING DISCLOSURE OF VPPA PII.

Because compelling arbitration is appropriate, the Court need not reach the substance of Plaintiff's VPPA allegations. But if it does so, Plaintiff's arguments against dismissal do nothing to remedy her failure to allege sufficient facts to put Tubi on notice of the claim that Tubi knowingly disclosed her VPPA PII as required by Federal Rule of Civil Procedure 8.

### A. Plaintiff's Invocation of Tubi's Privacy Policy and Other Documents Do Not Adequately Plead That Tubi Disclosed Plaintiff's VPPA PII.

Plaintiff's opposition only highlights the fact that her Amended Complaint does not state "a claim for relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or even provide enough detail to "put [Tubi] on notice of what the claim is and the grounds upon which it rests." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (citation omitted). To satisfy Rule 8, Plaintiff needed to plead: (i) what information identifies Plaintiff; (ii) what information identifies the video viewing material; (iii) the connection between the two establishing that she "requested or obtained" those video materials; (iv) that Tubi allegedly

knowingly discloses that combined information; (v) what mechanism Tubi allegedly uses to facilitate the alleged disclosure; and (vi) to whom Tubi allegedly discloses the VPPA PII. *See In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095–97 (N.D. Cal. 2015). Plaintiff's Amended Complaint satisfies none of these elements and falls far short of the "fair notice" that Rule 8 requires. *Twombly*, 550 U.S. at 555; *see Swanson*, 614 F.3d at 403 ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.").

In lieu of providing this necessary detail, Plaintiff points to four sources—the Privacy Policy, the Audience Insights Report and similar marketing materials, the TransUnion press release, and the Mozilla study. But even taken together, these documents are insufficient as a matter of law to state a claim.

***Tubi's Privacy Policy.*** First, while Plaintiff relies heavily on statements in the Privacy Policy that Tubi "may" disclose certain information of its users to certain third parties, Plaintiff does not allege in her complaint what specific types or combinations of information that she claims Tubi *actually does* disclose. Nor does Plaintiff say how the disclosure happens or to whom it is made.

Courts have rejected relying on such subjunctive language to establish a sufficient complaint for a privacy violation. For example, in *Nashel v. New York Times Co.*, No. 2:22-cv-10633, 2022 WL 6775657, at *2 (E.D. Mich. Oct. 11, 2022), the plaintiff brought a claim under a similar state privacy statute[2] based on a statement in the defendant's privacy policy "that Defendant 'may exchange or rent' subscriber private reading information." She argued, as Plaintiff

[2] *See Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 586 (S.D.N.Y. 2016) (noting that the statute at issue in *Nashel* "pursues a similar objective" to the VPPA).

does here, that "Defendant's privacy policy required an inference" that the defendant actually disclosed subscribers' private information. *Id.* at *5. The court disagreed, finding that this language "shows only that Defendant might disclose information in the future, not that any information was plausibly disclosed." *Id.* at *6.

Other courts have also consistently rejected data privacy claims based on barebones allegations that rely solely on privacy policies that only discuss data privacy practices in hypothetical terms. *See, e.g.*, *Gamez v. VF Corp.*, No. CV 18-6246, 2018 WL 6333560, at *3 (C.D. Cal. Nov. 21, 2018) (dismissing claim under California's Shine the Light Law based on a privacy policy because its language "cannot give rise to a reasonable inference that Defendant shared Plaintiff's personal information with third parties because it says only that Defendant *may* share personal information, not that it has a practice of doing so, and certainly not that it shared *Plaintiff's* information" (emphasis in original)); *Cooper v. Slice Techs., Inc.*, No. 17-CV-7102, 2018 WL 2727888, at *3 (S.D.N.Y. June 6, 2018) (allegation that defendant's emails to third parties "may have" contained customer data was insufficient to state claim). At bottom, because Tubi's Privacy Policy "does not say that Tubi *has disclosed* information *identifying an individual as having requested or obtained specific video materials*," in violation of the VPPA, it offers no support for Plaintiff's claim. Mem. at 12.

In her Opposition, Plaintiff argues that a Tubi "privacy notice" not mentioned in the Complaint "contradicts" the Privacy Policy's hypothetical language because it states that Tubi and its advertising partners "*use* certain personal information" to deliver advertisements "tailored to [a user's] interests." Opp. at 20 (quoting *Your Privacy Choices*, https://tubitv.com/privacy/your-privacy-choices). To begin with, Plaintiff cannot amend her complaint through her response brief. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448

(7th Cir. 2011). In any case, this privacy notice still does not support a reasonable inference that Tubi discloses VPPA PII. The statement "certain personal information" is too general to provide any basis for Plaintiff's claim; it does not actually explain what data is at issue or whether it was disclosed to a third party. In short, nothing in this notice actually shows that Tubi disclosed Plaintiff's, or anyone's, VPPA PII to any third parties.

***Pitch Materials and TransUnion.*** Plaintiff's only other allegations concern the advertising copy from Tubi's pitch materials and statements of third parties like TransUnion. *See* Am. Compl. ¶¶ 29–33. Tubi explained in its opening brief why these allegations are insufficient—either they discuss only aggregated data or include marketing language ("seamlessly bridge the gap between individual and household") that fails to put Tubi on notice of the grounds of Plaintiff's claim and, moreover, cannot plausibly support her claim. *See* Mem. at 13–15.

Plaintiff hardly even tries to refute these arguments. For example, Plaintiff briefly mentions her allegations around the TransUnion press release, Opp. at 18, but she does not explain how general statements about a business partnership reveal anything about *disclosure* of a *specific* user's identifying information paired with their specific viewing history. *See* Mem. at 14. And she fails to respond to the fact that the pitch materials do not provide any information that would suggest Tubi discloses any individual's VPPA PII to third parties. *See id.* at 13–14. Plaintiff's allegations and references to these documents fail to support her VPPA claim.

***Targeted Advertising.*** Finally, Plaintiff asserts that "the nature of how Defendant's streaming service operates necessarily means that it discloses its subscribers' viewing data." Opp. at 8. In other words, Plaintiff argues that any free, ad-supported service like Tubi cannot make money from advertising without disclosing to advertisers its users' VPPA PII in violation of federal law. Plaintiff offers no basis for this generalized and conclusory statement, which the Court

should disregard. *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019) (only "particularized factual content" can be the basis for an inference of liability; "conclusory allegations" are insufficient). The only facts Plaintiff has alleged about Tubi's services are that it runs advertisements and that it is free for users. Such facts do not lead to any sort of inference regarding Tubi's specific data practices, including what kind of information it collects or discloses to third parties. Plaintiff asks the Court to take a logical leap well beyond the pleading standards in federal court.

### B. Plaintiff's Reliance on Other VPPA Complaints Only Highlights the Deficiencies in Hers.

Finally, Plaintiff's reliance on decisions denying motions to dismiss other VPPA claims betrays the insufficiency of her own allegations. Opp. at 15–16. Tubi already distinguished Plaintiff's allegations from those upheld in *Lebakken v. WebMD Inc.*, 640 F. Supp. 3d 1335 (N.D. Ga. 2022), where the plaintiff hired a forensic consulting firm to analyze in detail what VPPA PII defendant disclosed and the technical specifics of the means defendant used. *Id.* at 1338. The other two cases Plaintiff relies on follow the same pattern. In the *Vizio* case, the plaintiff relied on a journalistic investigation of defendant's products to paint a full picture of the conduct alleged to constitute disclosure of VPPA PII, including (critically) specific allegations concerning the specific information disclosed and the specific mechanism by which defendant disclosed it. *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1225–26 (C.D. Cal. 2017). Similarly, in *Louth v. NFL Enterprises, LLC*, the plaintiff explained in great detail the precise types of identifying and viewing information defendant allegedly transmitted, and how the transmission was made. No. 1:21-cv-00405, 2022 WL 4130866, at *2–3 (D.R.I. Sept. 12, 2022).

Unlike the plaintiffs in those cases, Plaintiff does not allege that Tubi actually has disclosed the specific combination of information protected by the VPPA, or how Tubi allegedly does so.

As Tubi explained in its opening brief, VPPA PII is not just *any* personal information—it must be "information that 'readily permit[s] an ordinary person to identify a particular individual as having watched certain videos.'" Mem. at 11 (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (internal quotation marks and citation omitted)). Nothing in Tubi's Privacy Policy or any of the other materials on which Plaintiff relies comes close to suggesting that Plaintiff discloses that unique combination of identifying information and video viewing information. *Id.* at 12–14.

Plaintiff is wrong that Tubi's motion is asking the Court to engage in "judicial fact-finding" at the pleading stage. Opp. at 22 (quoting *Vizio*, 238 F. Supp. 3d at 1226). Tubi has shown that Plaintiff's allegations, "however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. And when faced with threadbare allegations like Plaintiff's, courts regularly dismiss VPPA claims at this stage for failure to adequately plead disclosure of VPPA PII. *E.g.*, *Buechler v. Gannett Co.*, No. 22-1464-CFC, 2023 WL 6389447, at *3 (D. Del. Oct. 2, 2023) (dismissing VPPA claim because allegations did not clearly state what information was disclosed and "d[id] not explain with sufficient clarity how the PII is disclosed … and who causes it to be disclosed"); *Martin v. Meredith Corp.*, No. 22cv4776 (DLC), 2023 WL 2118074, at *4 (S.D.N.Y. Feb. 17, 2023) (refusing to credit "a handful of generalized allegations saying that People.com shares video titles with Facebook" on a motion to dismiss); *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 92 (S.D.N.Y. 2022). This Court should do the same here.

## CONCLUSION

For the foregoing reasons and those articulated in Tubi's original motion and supporting brief, the Court should compel Plaintiff to arbitrate her claim and dismiss the action, or, in the alternative, dismiss the action for failure to state a claim. As further amendment would be futile, the dismissal should be with prejudice.

Dated: October 30, 2023

Respectfully submitted,

TUBI, INC.

By: */s/ David C. Layden*
One of its attorneys

David C. Layden
Andrianna D. Kastanek
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: 312 222-9350
Facsimile: 312 527-0484
DLayden@jenner.com
AKastanek@jenner.com

## CERTIFICATE OF SERVICE

I, David C. Layden, certify that on October 30, 2023, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ *David C. Layden*
David C. Layden